IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and            )
LABORERS' WELFARE FUND OF THE         )
HEALTH AND WELFARE DEPARTMENT         )
OF THE CONSTRUCTION AND GENERAL       )
LABORERS' DISTRICT COUNCIL OF         )
CHICAGO AND VICINITY, and JAMES S.    )
JORGENSEN, Administrator of the Funds, )
                                      )      Case No. 02 C 7374
            Plaintiffs,               )
                                      )      Judge Mark Filip
      v.                              )
                                      )
QUALITY GENERAL CONSTRUCTION,         )
INC., an Illinois corporation,        )
                                      )
            Defendant.                )

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the "Motion to Vacate Default Judgment" and

"Motion to Dismiss or, in the Alternative, for Summary Judgment" of Defendant Quality

Construction, Inc. ("Defendant" or "Quality General"). For the reasons explained below, the

Defendant's motions are denied.

I.    Background

The Laborers' Welfare Fund of the Health and Welfare Department of the Construction

and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund, and

James S. Jorgensen, Administrator of the Funds (collectively, "Plaintiffs" or "Laborers' Funds")

filed a complaint initiating the case on October 15, 2002. (D.E. 1. (the "Complaint").)[1]  The

_____

[1]        The various docket entries in this case are cited as "D.E. __."

Complaint alleges that Quality General violated the terms of a collective bargaining agreement (the "CBA"), which Defendant entered into with the Construction and General Laborers' District Council of Chicago and Vicinity ("the Union") in approximately June of 2002. (*Id.* ¶ 6.) (The Laborers' Funds are multiemployer benefits plans within the meaning of ERISA, and they are authorized to collect employer contributions owed to the funds, as articulated further in agreements between the Union and the Laborers' Funds which are binding as to Defendant through Defendant's agreement to the CBA. (*Id.* ¶3.)) The Laborers' Funds allege that Defendant has violated its obligations by, among other things, failing to make contributions for certain pension, health and welfare benefits, failing to submit certain books and records, and failing to obtain and maintain a surety bond. (*Id.* ¶¶ 11-12.) In the Complaint, Plaintiffs assert federal jurisdiction under §§ 502(e)(1) and (2) and 505 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(e)(1) and (2) and 1145, and § 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a). (*Id.* ¶ 1.)

In October 2002, the case was assigned to the Honorable Blanche M. Manning of the United States District Court for the Northern District of Illinois. Based on Defendant's failure to appear or answer, after having been served through the Secretary of State,[2] Judge Manning entered a default against Defendant pursuant to Federal Rule of Civil Procedure 55(a) on December 13, 2002. (D.E. 2, 3.) At that time, Judge Manning also directed the Laborers' Funds

---

[2] It also appears that the Laborers' Funds mailed a copy of the summons and Complaint via certified mail, return receipt requested, to Marek Kawa, the registered agent and co-owner of Quality General, at the company's registered office in Harwood Heights, Illinois. (*See* D.E. 37, Ex. A.) The Laborers' Funds attach what appears to be a copy of the returned receipt that was signed by Mr. Kawa on November 12, 2002. (*Id.*)

to file a motion for entry of a default judgment. (D.E. 3.) The Laborers' Funds subsequently filed a motion on December 26, 2002, which explained that they could not seek judgment in sum certain because Defendant had failed to comply with various reporting requirements, and the Laborers' Funds accordingly moved to compel an audit. (D.E. 4.)

On February 13, 2003, Judge Manning granted a motion for a rule to show cause why Marek Kawa, the co-owner and president of Quality General, should not be held in contempt of court for failure to submit the company's books and records to an audit. (D.E. 7.) Judge Manning ordered a writ of body attachment as to Marek Kawa for failure to appear in March 2003 (D.E. 9), which body attachment was discharged after a second Marek Kawa (who apparently lives near the Marek Kawa who owns Quality General) was erroneously brought before the Court. (D.E. 10.)

On July 8, 2003, Judge Manning issued a renewed rule to show cause why Marek Kawa, the president and co-owner of Quality General, "should not be held in contempt of court for failure to submit books and records to an audit." (D.E. 12.) The rule to show cause was returnable on September 9, 2003. (*Id.*) Mr. Kawa failed to appear as required on September 9, 2003, despite in-hand service of the rule to show cause on August 5, 2003. (D.E. 13.) Judge Manning therefore ordered the U.S. Marshals Service "to arrest Marek Kawa and bring him before the Court at the earliest possible time." (D.E. 14.) The next day, Judge Manning issued a writ of body attachment as to Mr. Kawa.

It appears, at least viewing things charitably to Mr. Kawa, that Mr. Kawa thereafter came to court "voluntarily" after learning of the outstanding writ of body attachment.[3] On October 7, 2003, Mr. Kawa agreed in court to submit books and records for an audit, as previously ordered. (D.E. 15.) At that time, Mr. Kawa advised the Court and counsel for the Laborers' Funds that Quality General had not performed any covered work and submitted books and records to Plaintiffs' counsel that Mr. Kawa represented as the complete records responsive to the Court's order. (D.E. 21 at 2.)

Plaintiffs thereafter issued third-party subpoenas to, *inter alia*, a general contractor, and Plaintiffs discovered that, at least in Plaintiffs' view, Defendant and Mr. Kawa had not produced all responsive documents. Plaintiffs also issued a subpoena to Mid-America Bank in Clarendon Hills, Illinois, calling for production of "[a]ll records including bank statements and canceled checks for any accounts held by Quality General Construction, Inc. a/k/a Quality Construction and/or Marek Kawa from the period of June 18, 2002 forward." (D.E. 17.) This subpoena prompted Defendant to file a motion to quash, in which Defendant argued that the subpoena was overbroad because it failed to distinguish between corporate accounts and personal accounts of Mr. Kawa and his wife, the Secretary of the Defendant corporation. (*Id.* at 1.) Mr. Kawa further

---

[3] A return of service of the writ of body attachment that was filed by the U.S. Marshal Service reflects that Deputy Marshals were required to arrest Kawa to get him to appear in Court. (D.E. 16.) A joint status report of the parties, however, suggests that Mr. Kawa may have appeared "pursuant to the issuance" of the writ of body attachment. (D.E. 21 at 2.) The Court will read this ambiguity in Mr. Kawa's favor, at least for present purposes. Under either scenario, Mr. Kawa took no responsible action, after having been hand-served with notice of the case and of his need to appear, for approximately two months and he only appeared in court upon threat of arrest by federal authorities. The hand service took place in the wake of what clearly appears to be actual notice to Mr. Kawa and Quality General in the form of the mailed copies of the summons and Complaint (see note 2, *supra*), which took place some eight months earlier, and which copies also were ignored until the Deputy U.S. Marshals intervened.

4

claimed that the subpoena sought bank records that "have no connection to Quality General." *(Id.)* On January 20, 2004, in response to the Defendant's motion to quash, Judge Manning ordered that Plaintiffs should file an amended subpoena to Mid-America Bank that would be "returnable to the chambers of this court for *in camera* inspection by 1/23/04." (D.E. 18.)

On March 3, 2004, the Executive Committee of the United States District Court for the Northern District of Illinois transferred the case to this Court, pursuant to the process employed in this district to supply cases to newly sworn district judges. After the transfer, this Court set the case for status on March 25, 2004, and requested the parties to file a joint status report. (D.E. 19.) The parties also were advised that this Court would address the pending discovery issue at the status hearing and would attempt to resolve it expeditiously.

In the lead-up to the initial post-transfer status conference, on March 12, 2001, the parties filed a joint status report. (D.E. 21) ("Joint Report").) In the Joint Report, the parties re-stated the grounds for federal subject matter jurisdiction alleged in the Complaint—namely, that the case involved claims under the federal ERISA statute and the federal LMRA statute. *(Id.* ¶ 2.)

At the March 25, 2004 hearing, the Court asked counsel for Defendant to tender copies of the relevant bank documents that the Laborers' Funds sought under the purportedly overbroad bank subpoena. Counsel for the Laborers' Funds suggested that Mr. Kawa was engaging in misconduct that would be exposed by the subpoenaed documents. The Court stated that it would attempt to review the records and have them available for the parties by the morning of March 29, 2004. On March 26, 2004, Defendant filed a motion to transfer the case and for a stay. (D.E. 22.) Defendant requested (1) a transfer of the case back to Judge Manning; and (2) that this Court should not review the subpoenaed documents pending a ruling on Defendant's transfer

request. (*Id.*)

This motion was denied in a written opinion, as it was substantially frivolous. (D.E. 23.) The Court also indicated that Mr. Kawa and Defendant would be given an opportunity to seek appellate review, and that if they did not do so, then the Court would release relevant documents as it had performed the *in camera* review. When Defendant and Mr. Kawa indicated that they would not seek to appeal, the Court issued a written opinion denying the motion to quash of Mr. Kawa and Quality General because nothing in the financial records appeared to implicate "personal" matters within any reasonable meaning of that term. (*See* D.E. 25.) The Court also denied the motion to quash because there were indications in the bank records that at least potentially suggested that Quality General, Mr. Kawa, and/or his wife were engaging in misconduct with respect to the financial affairs of Quality General as it related to their obligations to the Laborers' Funds. (*See id.*) The Court made no findings of misconduct by the corporation or Mr. Kawa, but the Court did conclude that the financial records clearly were discoverable to the Laborers' Funds under federal civil discovery principles. (*See id.*)

## II. The Pending Motions

On October 1, 2004, Defendant filed the Motion to Dismiss, or in the Alternative, for Summary Judgment and an accompanying memorandum. (D.E. 33 ("Motion to Dismiss").) Several weeks later, Defendant filed the Motion to Vacate Default Judgment. (D.E. 32 ("Motion to Vacate").) Plaintiffs filed a consolidated response to the Motion to Dismiss and Motion to Vacate. (D.E. 37 ("Plaintiffs' Response").) Thereafter, the Defendant submitted a reply. (D.E. 38 ("Defendant's Reply").)

In the Motion to Vacate, Defendant contends that: (i) at the time Mr. Kawa was served with process of the Complaint, the company had no employees and thus the CBA is void; (ii) Mr. Kawa was ignorant of the court procedures and "presumed" that, because the CBA is void, there was no need to respond to the Complaint; and (iii) the fact that the CBA is void is a "meritorious defense." (Motion to Vacate ¶¶ 1, 4, 5.) In response, Plaintiffs contend that the Defendant, through Mr. Kawa, "willfully and intentionally" evaded process of the Court, "willfully neglected the Court's Orders," and chose to ignore the pending case until forced to appear by U.S. Marshals. (Plaintiffs' Response at 4.)

In the Motion to Dismiss, Defendant states that the "solitary basis" for dismissal is that the CBA is "void because Quality has never employed an employee." (Motion to Dismiss at 1) (relying on *Laborers' Welfare Tr. v. Westlake Dev.*, 53 F. 3d 979 (9th Cir. 1995) ("*Westlake*"), and *Operating Eng'g Pension Trust v. Beck Eng'g and Surveying Co.*, 746 F.2d 557 (9th Cir. 1984) ("*Beck*").) In response, Plaintiffs argue that "[w]hile a collective bargaining agreement covering one employee or less can be revoked, it is incumbent on the company in question to affirmatively revoke the agreement before the agreement is rendered void." ((Plaintiffs' Response at 5) (also relying on *Westlake* and *Beck*).) Because Quality General has never indicated a desire to revoke the CBA, it cannot challenge the enforcement of the CBA during the time period at issue in this case. (*Id.* at 8.) Plaintiffs also argue that Defendant cannot satisfy the requirements set forth in precedent to justify vacating a default. (*Id.* at 4.)

In reply, Defendant reframes the issue presented in its motions as a jurisdictional issue: "whether or not the court has jurisdiction over a § 301 complaint seeking monetary damages from a corporation under a pre-hire collective bargaining agreement, under circumstances where

7

the corporation never employed an employee during its entire existence." (D.E. 38 at 2.) In addition, in the reply, Defendant contends that it mistakenly titled its motion to vacate as a motion to vacate a "default judgment," rather than to vacate an "entry of a default" and suggests that the analysis should proceed as if it moved to vacate a default as opposed to a default judgment. (D.E. 38 at 1.)[4]

---

[4] Although it is not of practical significance, because the Court would deny Defendant's motion to vacate irrespective of whether it sought to vacate a default or default judgment, Defendant's attempt to reframe its motion in its Reply so as to request different relief is procedurally defective, in that it deprived the Laborers' Funds of the ability to respond to the essence of the motion Defendant would seek to bring. *See, e.g., United States v. Feinberg*, 89 F.3d 333, 340-41 (7th Cir.1996) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court."); *RB&W Mfg. LLC v. Buford III*, No. 02 C 8853, 2004 WL 2496242, at *4 (N.D. Ill. Nov. 4, 2004) (denying motion for summary judgment because movant's first attempt to address relevant issue was in its reply brief, thereby depriving non-movant of opportunity to properly respond); *Weizeorick v. ABN AMRO Mortgage Group, Inc.*, No. 01 C 713, 2004 WL 1880008, at *2 (N.D. Ill. Aug. 3, 2004) (holding that "[i]t is elementary that parties may not raise new arguments or present new facts in their reply, thus depriving their opponent of the opportunity to respond"). In any event, the Court would, given the facts of the case, deny Defendant's motion regardless of whether it sought to vacate a default or default judgment. Equally if not more procedurally improper is Defendant's attempt to interject an entirely new defense into the proceedings and the analysis on the very last page of its reply brief. *See* D.E. 38 at 7 (stating that if Defendant's jurisdictional objection fails, Defendant will attempt to raise another defense by alleging that "Kawa was coerced" into signing the union agreements by union representatives). Defendant's attempt to raise a "coercion" issue in its reply brief violates fundamental procedural rules and the argument fails on that basis alone. In addition, and independently, as explained at the end of this opinion, Seventh Circuit precedent teaches that this purported "coercion" defense is substantively meritless as against the Laborers' Funds, which are entities distinct from the union and which are treated like a holder in due course and are not subject to defenses that might apply to the union concerning any obligations of Defendant to it. *See Central States, S.E. and S.W. Areas Pension Fund v. Gerber Truck Serv.*, 870 F.2d 1148, 1149 (7th Cir. 1989) (en banc) ("[A] plan may enforce the writings according to their terms, if not otherwise inconsistent with the law. The pension or welfare fund is like a holder in due course in commercial law, or like the receiver of a failed bank—entitled to enforce the writing without regard to the understanding or defenses applicable to the original parties. In so concluding, we follow our own unanimous opinion in *Robbins v. Lynch*, 836 F.2d 330 (7th Cir. 1988), and the unanimous view of the other courts of appeals.") (various internal citations and quotation marks omitted for clarity).

## II.    Analysis

Even if the facts alleged by the Defendant were true—that is, even if Quality General

never employed any employees—the Court finds that there is federal subject matter jurisdiction

over the case *sub judice*.  In addition, without regard to whether or not the default entered by

Judge Manning constitutes a "judgment by default" or "entry of default," the Court finds that

Defendant has not presented a sufficient basis to vacate the default order under Rule 55(c) or

Rule 60(b) of the Federal Rules of Civil Procedure.

### A.    Fed. R. Civ. P. 55(c) and 60(b)

Rule 55(c) of the Federal Rules of Civil Procedure provides for relief from entries of

default, whereas Rule 60(b) provides for relief from judgments by default.  *See* Fed. R. Civ. P.

55(c) and 60(b).  Consistent with the traditional equitable powers of courts, Rule 55 provides

relief from entries of default for "good cause shown."  Fed. R. Civ. P. 55(c).  With respect to

default judgments, Rule 55(c) provides that "if a judgment by default has been entered, a court

may likewise set it aside with Rule 60(b)."  Fed. R. Civ. P. 55(c).  The "standard to set aside the

entry of default under Rule 55(c) is essentially the same as the standard for vacating a default

judgment under Rule 60(b)."  *Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 367 (7th Cir.

1983) (citation omitted).  However, precedent teaches that defaults are vacated more generously

than default judgments under the applicable analytical guideposts.  *See, e.g., id.* at 368 (citation

omitted).  A motion to set aside a default requires a court to reconcile the goal of permitting the

defaulting party an opportunity to contest the merits of the dispute with the practical

requirements of judicial administration and the desire not to prejudice a blameless party that has

acted diligently.

## B. Subject Matter Jurisdiction

Under either Rule 55(c) or Rule 60(b) of the Federal Rules of Civil Procedure, if the default order Judge Manning entered is not supported by subject matter jurisdiction, then this Court is required to vacate the order. With respect to Rule 55(c), lack of jurisdiction provides "good cause" for setting aside the entry of default. *See, e.g., Marcantonio v. Primorsk Shipping Corp.*, 206 F. Supp. 2d 54, 60 (D. Mass. 2002) (treating lack of personal jurisdiction as meritorious defense). Likewise, Rule 60(b)(4) grants relief from judgment where the "judgment is void"; a default judgment rendered without subject matter jurisdiction has traditionally been considered void and susceptible to attack. *See, e.g., V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224-225 (10th Cir. 1979); *United States v. McDonald*, 86 F.R.D. 204, 208 (N.D. Ill. 1980). Unlike other motions to vacate under Rule 60(b), which are committed to the sound discretion of the court, a court entertaining a 60(b)(4) motion has no discretion and must grant such a motion if it determines that the court lacked jurisdiction in the first instance. *See Textile Banking Co. v. Rentschler*, 657 F.2d 844, 850 (7th Cir. 1981).

The fact that Defendant acknowledged that the Court had subject matter jurisdiction in the Joint Report, and then waited until Defendant's reply brief in connection with its pending motions to explicitly challenge the Court's subject matter jurisdiction, is certainly unhelpful. However, it does not absolve the Court of its duty to determine whether it has subject matter jurisdiction over the case. Indeed, jurisdiction is the "power to declare law," and without it a federal court cannot proceed. *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 583 (1999). Accordingly, not only may the federal courts police subject matter jurisdiction *sua sponte*, they must. *Id.* Federal

10

courts "have an obligation—regardless of the arguments advanced to them by the parties—to assure themselves of their own jurisdiction." *Macklin v. U.S.*, 300 F.3d 814, 819 (7th Cir. 2002) (citing omitted)).[5]

1. The Labor Management Relations Act of 1947

The CBA in this case is a "pre-hire agreement," authorized by § 8(f) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a). As the Seventh Circuit has repeatedly explained, "[a] pre-hire agreement or 8(f) agreement is a contract agreed to by a union and an employer before the workers to be covered by the contract have been hired." *NLRB v. Bufco Corp.*, 899 F.2d 608, 609 n. 1 (7th Cir. 1990) (citing *Robert's Dictionary of Industrial Relations, Third Edition*, at 562 (1986), and 29 U.S.C. § 158(f)); *accord, e.g., NLRB v. O'Daniel Trucking Co.*, 23 F.3d 1144, 1146 n.1 (7th Cir. 1994). These agreements generally are illegal,

---

[5] The Federal Rules of Civil Procedure contemplate that any challenge to the court's jurisdiction will be brought at a prejudgment stage by way of a Rule 12(b)(2) or 12(b)(5) motion to dismiss. Where the jurisdictional predicates are so challenged, it is settled that the plaintiff has the burden of establishing the jurisdictional facts. *See, e.g., RAR, Inc. v. Turner Diesel*, 107 F.3d 1272, 1276 (7th Cir. 1997). However, in a situation where a party seeks to vacate a default on jurisdictional grounds, the Seventh Circuit has imposed the burden of proof on the movant, usually the defendant, to establish the nonexistence of the court's jurisdiction. *See Bally Expert Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986).

The fact that the defendant had notice of the original proceedings but chose not to contest the jurisdictional issue until after entry of default judgment was significant to the *Bally Expert* court. *Id.* at 401. Likewise, in the case *sub judice*, there is no dispute that the Defendant received notice of the proceedings and case—through in-hand service in August 2003 of the rule to show cause (and apparently also through receipt of the Complaint and summons by mail in November 2002)—and then waited until October 2004 to challenge the jurisdiction of the federal courts to enter the December 2002 default order. Accordingly, under *Bally Expert*, the Court finds that the Defendant bears the burden of proof, without regard to whether Defendant is seeking to vacate a default judgment or default. The burden of proof issue, however, is not of any practical consequence, because even if Plaintiffs have the burden of showing that jurisdiction properly lies, Plaintiffs have certainly met it, as subject matter jurisdiction has been demonstrated through the Plaintiffs' averments and exhibits under both the LMRA and also, independently, under ERISA.

except in the construction industry, which enjoys a statutory exemption under § 8(f) of the

LMRA. *See, e.g.*, *Martin v. Garman Constr. Co.*, 945 F.2d 1000, 1001 n.3 (7th Cir. 1991).

Section 8(f) provides in pertinent part:

> It shall not be an unfair labor practice . . . for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged *(or who, upon their employment, will be engaged)* in the building and construction industry with a labor organization of which building and construction employees are members . . . because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement, or (2) such agreement requires as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment . . . .

29 U.S.C. § 158(f) (emphasis added). The Supreme Court has explained that "[o]ne factor

prompting Congress to enact § 8(f) was the uniquely temporary, transitory and sometimes

seasonal nature of much of the employment in the construction industry. Congress recognized

that construction industry unions often would not be able to establish majority support with

respect to many bargaining units." *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 266 (1983) (citing S.

Rep. No. 187, 86th Cong., 1st Sess., 55-56 (1959), 1 Leg. Hist. 541-542, U.S. Code Cong. &

Admin. News 1959, p. 2318). *"Congress was also cognizant of the construction industry

employer's need to 'know his labor costs before making the estimate upon which his bid will be

based'* and that 'the employer must be able to have available a supply of skilled craftsmen for

quick referral. '" *Id.* (quoting H.R. Rep. No. 741, 86th Cong., 1st Sess., 19 (1959), 1 Leg. Hist.

777, U.S. Code Cong. & Admin. News 1959, p. 2318) (emphasis added).

Section 8(f) contracts are enforceable in federal court pursuant to section 301 of the

LMRA. *See, e.g., Jim McNeff, Inc.*, 461 U.S. at 269-70, 272. Section 301 of the LMRA

provides:

12

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). For the reasons discussed below, the Court concludes that whether Quality General employed any employees is not relevant to the express grant of federal jurisdiction provided by the LMRA.

First, Congress enacted § 8(f) of the LMRA for the express purpose of authorizing construction industry employers to enter into collective bargaining agreements with a union *before* the employer hires employees or the union establishes majority status with the employees. *See* 29 U.S.C. § 158(f) ("covering employees engaged (or who, upon their employment will be engaged)"). To be sure, with respect to a statutory grant of federal jurisdiction, if Congress wishes to limit federal court jurisdiction, it knows how to do so. *See, e.g.,* 28 U.S.C. § 1332 (limiting federal court's jurisdiction in diversity cases to situations in which amount in controversy exceeds $75,000). If Congress intended to limit federal jurisdiction to actions involving agreements where the union already established majority status or where the employer already had employees, it would have said so in section 301.

Second, neither the Defendant nor the Plaintiffs mention Seventh Circuit authority discussing the issue of federal subject matter jurisdiction over a § 8(f) "pre-hire agreement" suit. In *International Brotherhood of Electrical Workers, Local 481 v. Sign-Craft, Inc.*, 864 F.2d 499 (7th Cir. 1988), the Seventh Court explained that "under § 301(a) any disputes about the meaning or validity of collective bargaining agreements come within the jurisdiction of the federal courts." *Id.* at 502; *see also id.* (holding that district court had jurisdiction over claim filed by

13

union alleging that employer improperly repudiated collective bargaining agreement).[6]

The Seventh Circuit's decision in *J.W. Peters, Inc. v. Bridge, Structural and Reinforcing Iron Workers, Local Union 1, AFL-CIO*, 398 F.3d 967 (7th Cir. 2005), also supports the conclusion that there is federal court jurisdiction. In *J.W. Peters*, the plaintiff sought declaratory relief with respect to the defendant's alleged violation of the terms of the collective bargaining agreement by attempting to repudiate the agreement without proper notice. *Id.* at 972. The *J.W. Peters* court concluded that the district court had jurisdiction over the suit under § 301 of the LMRA. *Id.* at 972-73. The court reasoned that the plaintiff brought a suit for "violation of contracts" within the meaning of § 301 of the LMRA and there was a ripe dispute between the parties as to whether or not the contract was valid. *Id.* at 972-73.

In this case, the Complaint alleges numerous violations of the CBA. (*See* D.E. 1 ¶ 11.) These allegations confer federal court jurisdiction under §301 of the LMRA, and the fact that there might have been a dispute with respect to the validity of the CBA at the time Judge Manning issued the default order argues in favor of federal court jurisdiction. *See id.* at 973; *Sign-Craft*, 864 F.2d at 502. To conclude otherwise would allow any defendant to a suit under § 301 of the LMRA to avoid federal court jurisdiction merely by raising the defense that the collective bargaining agreement is not valid. Precedent does not support such a result.

Third, notwithstanding Defendant's arguments, cases holding that a "pre-hire agreement" is voidable and thus can be repudiated prior to the union's achieving majority status among the employees of the employer, or when the employer only has one employee remaining

---

[6]    In *Sign-Craft, Inc.*, the Seventh Circuit overruled its prior decision in *NDK Corp. v. Local 1550 of the United Food & Commercial Workers Int'l Union*, 709 F.2d 491 (7th Cir. 1983). *See Sign-Craft, Inc.*, 864 F.2d at 502.

in the covered unit (known as the "single employee" rule), do not direct a different result concerning jurisdiction. (*See* Motion to Dismiss at 1-3; Defendant's Reply at 3-5.) Jurisdictional analyses are different from analyses on the merits.

Moreover, with respect to the "voidability" issue, even if it is true that Quality General does not employ any employees, to render the agreement void, Quality General must affirmatively repudiate the agreement under the caselaw cited by the parties. *See Westlake*, 53 F.3d at 984. Not even Quality General has alleged that it took steps to repudiate the CBA. Instead, by not taking steps to void the pre-hire agreement, Defendant enjoyed the benefits afforded to a putative employer in the construction industry by such agreements. *See Jim McNeff, Inc.*, 461 U.S. at 271 (teaching that allowing welfare funds "to enforce overdue obligations accrued under a prehire agreement prior to its repudiation vindicates the policies Congress intended to implement in § 8(f). [. . . .] However limited the binding effect of a prehire agreement may be, it strains both logic and equity to argue that a party to such an agreement can reap its benefits and then avoid paying the bargained for consideration.").[7]

For all of these reasons, the Court finds that it has subject matter jurisdiction over this case pursuant to § 301 of the LMRA.

2.     Employee Retirement Income Security Act of 1974

In addition, and independently, the Court finds that subject matter jurisdiction properly lies under ERISA. Indeed, despite Defendant's (erroneous) claims about lack of jurisdiction

---

[7] *J.W. Peters* did not afford relief on the merits to the Defendant labor-parties. However, none of the labor-parties in *J.W. Peters* were welfare and benefits funds, and *J.W. Peters* did not, unlike this case, involve claims under ERISA. *See J.W. Peters*, 398 F.3d at 977 (discussing how many defenses that might be applicable against a construction union are unavailable as a matter of law against a construction laborers' welfare fund advancing claims under ERISA).

under the LMRA, Defendant never even challenges jurisdiction as conferred by ERISA, which is another independent basis for jurisdiction alleged in the Complaint.

Sections 502(e) and 515 of ERISA provide an additional ground for federal court jurisdiction over this case. Section 502(e) of ERISA establishes that district courts have exclusive jurisdiction over actions under ERISA. *See* 29 U.S.C. § 1132(e)(1). Precedent teaches that Congress added § 515 to ERISA in 1980 to address the problems that arose when employers repudiated pre-hire agreements and refused to make pension and welfare contributions, making employers' promises to contribute to such plans "enforceable 'to the extent not inconsistent with the law.'" *J.W. Peters*, 398 F.3d at 977 (quoting *Central States*, 870 F.2d at 1152-53 (in turn quoting 29 U.S.C. § 1145)).

The Seventh Circuit has concluded that § 515 permits ERISA claims to survive, even when the underlying collective bargaining agreement is deemed invalid. *Id.* at 977. Specifically, *J.W. Peters* reasoned that "'nothing in ERISA makes the obligation to contribute depend on the existence of a valid collective bargaining agreement.'" *Id.* (quoting *Central States*, 870 F.2d at 1153). The court reasoned that where "'the employer simply points to a defect in [contract] formation–such as fraud in the inducement, oral promises to disregard the text, or the lack of majority support for the union and the consequent ineffectiveness of the pact under labor law–it must still keep its promise to the pension plans.'" *Id.* (quoting both *Central States*, 870 F.2d at 1153 and *Martin v. Garman Constr. Co.*, 945 F.2d 1000, 1004 (7th Cir. 1991)) (emphasis in *J.W. Peters* omitted). Likewise, in *Martin*, the Seventh Circuit observed that the single employer rule ("one-man rule") may count "for naught when the contract is cognizable under ERISA." 945 F.2d at 1005 (citation omitted).

Accordingly, the Court finds that the Plaintiffs' allegation regarding the Defendant's failure to satisfy its ERISA obligations to the Laborers' Funds provides an additional and independent ground for federal court jurisdiction.

### C.    Other Claimed Basis to Vacate

To set aside the order of default, Defendant must show: 1) good cause for the default; 2) quick action to correct the default; and 3) a meritorious defense to the Complaint. *See Zuelzke Tool & Eng'g Co., Inc. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 229 (7th Cir. 1991) (citation omitted). The Court has discretion to determine whether Defendant has satisfied this test. *See id.* (district court has "wide latitude"); *accord, e.g., Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 47 (7th Cir. 1994) ("[D]istrict court will be found to have abused its discretion [in ruling on a Rule 55(c) motion] only if we conclude that 'no reasonable person' could agree with its judgement."). While the test is identical under either Rule 55(c) (motion to vacate an entry of default) or Rule 60(b) (motion to vacate a default judgment), as mentioned above, the test under Rule 60(b) is much more limited and thus less generous to the movant. *See Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 367 (7th Cir. 1983); *see also Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 187 (7th Cir. 1982). As precedent instructs, the Seventh Circuit has "long since moved away from the position of disfavoring default judgments." *Pretzel & Stouffer*, 28 F.3d at 47 (collecting cases).

Central to the good cause element is the requirement that a defendant must exercise reasonable diligence in checking with counsel and monitoring developments in the litigation. In *Zuelzke Tool & Engineering Co., Inc.*, the Seventh Circuit observed that "where a party willfully, albeit through ignorance [of the law] or carelessness, abdicates its responsibilities," relief from a

default is not warranted. 925 F.2d at 229 (citing *North Cent. Ill. Laborers' Dist. Council v. S.J. Groves & Sons Co., Inc.,* 842 F.2d 164, 167 (7th Cir. 1988)); *see also Chrysler Credit Corp.,* 710 F.2d at 368. Even giving *Zuelzke Tool* the most liberal reading for purposes of Rule 55(c), the Court finds that Defendant did not establish good cause for defaulting.

Defendant asserts that the default resulted from Mr. Kawa's "ignorance of the necessity of filing a formal response to complaints served upon the corporation" (D.E. 32 at 2)—that is, Mr. Kawa mistakenly presumed that, because Quality Labor had no employees, the CBA was void and thus he did not need to answer or appear in Court. The Court is skeptical of the claim that Mr. Kawa did not understand the summons served upon him, but that he did have an understanding of the inner workings of the LMRA such that he thought he was on solid ground in disregarding the legal process that facially required Defendant to appear and to respond in court. In any event, the failure by Defendant to file an answer was not the only problem. Mr. Kawa only appeared in Court after Judge Manning ordered the U.S. Marshals Service to arrest Mr. Kawa and bring him before the Court. What is more, the Defendant waited well over a year (closer to two years) from the date the Court issued the default order to seek vacatur.[8]

Where, as here, the defaulting party (either directly, or through its counsel) has willfully chosen not to conduct its litigation with the degree of diligence and expediency prescribed by the

---

[8] Although it is not material to the Court's decision, the Court notes that during this interim period of time, instead of seeking to vacate the default, Defendant interposed a baseless discovery objection about the third-party bank subpoena (which this Court later overruled, *see supra*) and requested judicial review of mundane financial records. Indeed, the only thing exceptional about those records was the at least facially suspicious nature of some of the financial transfers involved in these "personal only" accounts. Time will tell whether any of these financial transfers are germane (the Court takes no view), but the salient point is that Defendant and Mr. Kawa did not act with any reasonable diligence in seeking to vacate Judge Manning's default order.

18

trial court, Seventh Circuit precedent has repeatedly upheld the trial court's denial of a motion to vacate a default. *See, e.g., Zuelzke Tool*, 925 F.2d at 229 (stating that the defendant "was not diligent in protecting its interests and there is no showing that it was misled by . . . [plaintiff] into believing that no harm would come to it through its failure to act. A careless attitude or even a genuine misunderstanding between the corporate entities . . . is insufficient to describe . . . [defendant's] abdication of control over its own fate as 'excusable' neglect."); *Inryco, Inc. v. Metro. Eng'g Co.*, 708 F.2d 1225, 1231 (7th Cir. 1983) (defendant's counsel "showed a callous disregard for the procedures in this circuit"); *Textile Banking Co.*, 657 F.2d at 854 (7th Cir. 1981) ("[T]he liberal attitude toward vacating [default] judgments is sharply modified when the defaulting party's actions appear to be willful."). Similarly, where a defaulting party was aware of or should have been aware of its responsibilities to the opposing party and to the court, and failed to live up to those responsibilities through unexcused carelessness or negligence, the default order has been left intact. *See, e.g., Breuer Elec.*, 687 F.2d at 187 ("Whether defendants intended to do so or not, their procedural misadventures have prolonged this litigation significantly, thereby prejudicing plaintiff's right to a timely disposition of its claim for relief."); *Ben Sager Chem. Int'l v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir. 1977) ("Neither ignorance nor carelessness on the part of a litigant or his attorney provide grounds for relief under Rule 60(b)(1).") (citation omitted); *Morgan v. Berry*, 785 F. Supp. 187, 197-98 (D.D.C. 1992) (denying motion to vacate default and finding no good cause, when defendant did not understand the papers he received concerned a lawsuit). Moreover, any vacating of Judge Manning's default order would prejudice the Laborers' Funds, which would be required to invest substantial money and time in additional litigation, and which already have been required to

19

devote additional time and resources to address Defendant's belated efforts to excuse itself from its own inattentiveness and misconduct. *See Chrysler Credit Corp.*, 710 F.2d at 367 ("[R]eopening the entry of default would have prejudiced . . . [the plaintiff], the party without fault, by requiring it to devote time and money to additional litigation.").

Precedent teaches that a party's failure to show good cause for entry of a default alone is sufficient to warrant denial of a motion to vacate. *See Zuelzke Tool*, 925 F.2d at 230 (collecting Seventh Circuit cases and holding that failure to show good cause for default was sufficient basis to refuse to vacate an entry of default, even if the defendant had a meritorious defense); *accord, e.g., Travelodge Hotels, Inc. v. Taurus Hotels Corp.*, 179 F.R.D. 569, 571 (C.D. Ill. 1998) (citing *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994), and *Pretzel & Stouffer*, 28 F.3d at 46) (defendant must meet all three requirements necessary to justify relief)).

In addition, and independently, Defendant could not show quick action to correct the default—another prerequisite for relief. No matter how one calculates the applicable dates, Defendant waited many months (indeed, nearly a year) after notice of entry of default to move to vacate.[9] During that period of time (during which Defendant was represented for much of the time), Defendant made various legal filings, but never moved to vacate. This is not quick action within the meaning of precedent or the equities of this case. *See, e.g., Zuelzke Tool*, 925 F.2d at 230 (four month delay not timely).

---

[9] These time calculations are based on Mr. Kawa's in-hand receipt of notice of the rule to show cause in August 2003 and his October 2004 motion to vacate. If one starts the clock upon Mr. Kawa's and Quality General's apparent receipt of notice by mail in November 2002 of the Complaint and summons to appear, then Defendant waited nearly two years to move to vacate Judge Manning's default order.

Likewise, and again, independently, Defendant has failed to properly raise a meritorious defense—another prerequisite for relief. In its opening papers, Defendant expressly stated that "[t]he solitary basis" for the claimed relief was "that the collective bargaining agreement is void because . . . [Defendant] has never employed an employee." (D.E. 33 at 1.) Defendant reframed this objection as a jurisdictional one in its reply brief. (D.E. 38 at 2.) As explained above, this allegation does not defeat jurisdiction concerning the pre-hire agreement under the LMRA, and Defendant never even challenges the independent basis for federal jurisdiction under ERISA, which also grounds federal court jurisdiction here. Thus, Defendant has failed to proffer a valid defense that would warrant reopening these proceedings and prejudicing the (faultless) Laborers' Funds.

On the very last page of its reply brief, Defendant suggests for the first time that another meritorious defense might exist, in that Defendant would seek to contend that Kawa "was coerced into signing" the CBA by a union representative. (D.E. 38 at 7.) Such a belated argument in the reply brief violates fundamental procedural rules, on which basis alone it must be disregarded. In addition, even if the argument had been properly made, it appears to be clearly meritless. Based on the Court's own research, it appears that precedent teaches that the a union pension or welfare fund may enforce an employer's obligations concerning benefits contributions, irrespective of whatever defects might vitiate obligations between the original contracting parties—*i.e.*, the union and the employer. *See Central States,* 870 F.2d at 1149 ("[A] plan may enforce the writings according to their terms, if not otherwise inconsistent with the law. The pension or welfare fund is like a holder in due course in commercial law, or like the receiver of a failed bank—entitled to enforce the writing without regard to the understanding or defenses

applicable to the original parties. In so concluding, we follow our own unanimous opinion in *Robbins v. Lynch*, 836 F.2d 330 (7th Cir. 1988), and the unanimous view of the other courts of appeals.") (various internal citations and quotation marks omitted for clarity). Under this precedent, any claim of coercion vis-a-vis the union would not relieve Defendant from its contribution obligations to the Laborers' Funds in any event. *See, e.g., id.* at 1153 ("If the employer simply points to a defect in its [the CBA's] formation—such as fraud in the inducement,. . . —it must still keep its promise to the pension plans. Anything less may well saddle the plans with unfunded obligations.").

As a result, Defendant has failed to justify vacating Judge Manning's order of default. The parties should promptly endeavor to determine the amount of applicable damages, or be prepared to schedule a trial date if a joint analysis and negotiation appears unlikely to be fruitful.[10]

---

[10] Although a moot point, the Court notes that Defendant's summary judgment filings did not comply with Local Rule 56.1 and therefore could not have provided a basis for relief. Under Local Rule 56.1, a summary judgment movant must file a "statement of material facts," which "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." L.R. 56.1. As courts have repeatedly held, a "specific reference" means including proper and specific citations to "exact pieces of the record that support the factual contention contained in the paragraph. In other words, citations must include page (or paragraph) numbers, as opposed to simply citing an entire deposition, affidavit, or other exhibit document: '[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes.' Factual allegations not properly supported by citation to the record are nullities." *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D.Ill. 2000) (Castillo, J.) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. *See, e.g., Koszola v. Bd. of Ed. of City of Chicago,* 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1316 (7th Cir. 1995) (collecting cases)). In this case, Defendants Local Rule 56.1 statement does not contain appropriate, specific citations to record material and the statement therefore could not ground any request for relief.

## IV. Conclusion

For all of the reasons stated herein, the Court denies Defendant's "Motion to Vacate Default Judgment" and "Motion to Dismiss or, in the Alternative, for Summary Judgment" (D.E. 32 and 33).

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Dated: ___6-3-05___